UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 07-3892(DSD/SRN)

Mid-Continent Engineering,
Inc., a Minnesota corporation,

       Plaintiff,

v.                                                      **ORDER**

Toyoda Machinery USA, Corp., an
Illinois corporation, and JTEKT
Corporation, a Japanese corporation,

       Defendants.


>    Jonathan M. Bye, Esq., Karla M. Vehrs, Esq., and
>    Lindquist & Vennum, 4200 IDS Center, 80 South Eighth
>    Street, Minneapolis, MN 55402, counsel for plaintiff.
>
>    John M. Harper III, Esq., Molly R. Hamilton, Esq. and
>    Krass Monroe, PA, 8000 Norman Center Drive, Suite 1000,
>    Bloomington, MN 55437 and Edward J. Underhill, Esq., Erin
>    M. Gaeke, Esq. and Masuda, Funai, Eifert & Mitchell, 203
>    North LaSalle Street, Suite 2500, Chicago, IL 60601,
>    counsel for defendants.


This matter is before the court on defendant JTEKT Corporation's ("JTEKT") motion to dismiss. After a review of the file, record and proceedings herein, and for the following reasons, the court denies JTEKT's motion.

**BACKGROUND**

This contract dispute arises out of plaintiff Mid-Continent Engineering, Inc.'s[1] ("Mid-Continent") purchase of horizontal machining centers - large machines designed to cut and shape metal into tools, industrial parts and automotive components - from defendant Toyoda Machinery USA, Corp. ("Toyoda").[2] Mid-Continent purchased two machines in 2001 and two in 2003 for $587,980 apiece. Each machine contained spindles that operated at a speed of 20,000 rotations per minute ("RPMs"). The spindle speed controlled the machines' output and efficiency, and approximately $136,850 of the cost per machine was for the spindles.

At the time Mid-Continent purchased the machines, Toyoda was a wholly-owned subsidiary of Toyoda Machine Works, Ltd. ("TMW"), a Japanese corporation headquartered in Japan. Toyoda was TMW's exclusive machine tools distributor in North America pursuant to an April 2000 sales agreement. The sales agreement contained the following warranties:

> (1) TMW warrants that the products are not defective in their materials and workmanship;

---

[1] Mid-Continent is a Minnesota corporation with its principal place of business in Minnesota that manufactures industrial machine parts for the aerospace and medical technology industries.

[2] Toyoda is an Illinois corporation with its principal place of business in Illinois that sells machinery.

2

>   (2) The warranty period by TMW shall be eighteen months after the date of consignment of products to ship and twenty months after the date of purchase;
>
>   (3) TMW shall fix by own expense and self-responsibility in case of unsatisfaction [sic] on above item (1).

(Bye Aff. Ex. V at 19.)

On January 1, 2006, TMW merged with another Japanese corporation, Koyo Seiko Co., to form JTEKT. JTEKT succeeded to TMW's liabilities and became Toyoda's parent corporation. (Id. Ex. A at 51; McNeil Aff. at 2-3.) In July 2007, JTEKT and Toyoda entered into an exclusive distributorship agreement that terminated the 2000 sales agreement. (Bye Aff. Ex. P § 15.3.) The distributorship agreement describes Toyoda's relationship with JTEKT as follows:

>   [Toyoda] undertakes to work efficiently to market [JTEKT's] products with a view to developing, expanding and improving sales of the products throughout the territory.
>
>   JTEKT and [Toyoda] shall discuss and determine [Toyoda's] product distribution plans and the sharing of costs related to market research, advertisement for and the holding of private shows, participation in exhibitions, etc.
>
>   JTEKT will from time to time provide [Toyoda] with advertising materials and sales materials. The cost of [the materials] shall be discussed and determined by the parties.

(Id. Ex. A at 37, Ex. P §§ 4.1, 4.2, 4.6.) The goal of the distributorship agreement is to "maximize the sales" of JTEKT's products in North America. (Id. Ex. A at 37, 41-42, Ex. P § 1.)

3

After Mid-Continent purchased the four machines from Toyoda, they began to break down due to the repeated failure of the spindles. In response, Toyoda replaced some of the spindles under its warranty and Mid-Continent paid Toyoda $331,000 to complete repairs that were ultimately unsuccessful. Toyoda then retrofitted the machines with slower spindles that operate at a speed of 14,000 to 15,000 RPMs. According to Mid-Continent, the inoperative spindles resulted in 4,642 hours of lost operation time and $1,145,476 in losses for initial costs, repairs and retrofitting.

On August 15, 2007, Mid-Continent filed a four-count complaint in state court against Toyoda, asserting breach of contract and warranty. Toyoda timely removed, and admitted in its answer that it sold the machines to Mid-Continent, but identified JTEKT as the manufacturer of the machines.[3] (Id. Ex. D at 6.) Mid-Continent then amended its complaint to add JTEKT as a defendant. JTEKT now moves to dismiss for lack of personal jurisdiction

## DISCUSSION

To survive a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), a plaintiff must establish a prima facie case that the forum state has personal jurisdiction over the defendant. See Stevens v.

---

[3] In a December 9, 2008, amended interrogatory answer, Toyoda identified TMW as the manufacturer. (Id. Ex. E at 2.)

Redwing, 146 F.3d 538, 543 (8th Cir. 1998).  In the absence of an evidentiary hearing, a court "must look at the facts in the light most favorable to the nonmoving party and resolve all factual conflicts in favor of that party." Dakota Indus., Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1387 (8th Cir. 1991) (citations omitted).  A federal court may assume jurisdiction over a nonresident defendant "only to the extent permitted by the long-arm statute of the forum state and by the Due Process Clause." Romak USA, Inc. v. Rich, 384 F.3d 979, 984 (8th Cir. 2004) (quotations omitted).  Because the Minnesota long-arm statute "confers jurisdiction to the fullest extent permitted by the Due Process Clause," the court need only consider due process requirements. Coen v. Coen, 509 F.3d 900, 905 (8th Cir. 2007) (citation omitted).

To satisfy due process, a defendant must have "sufficient minimum contacts" with the forum state such that maintaining the suit "does not offend traditional notions of fair play and substantial justice."  Romak, 384 F.3d at 984.  "Sufficient contacts exist when [a] defendant's conduct and connection with the forum state are such that [it] should reasonably anticipate being haled into court there."  Coen, 509 F.3d at 905 (citation and quotation omitted). A defendant should reasonably anticipate being haled into court in a forum state within which it "purposefully avail[ed] [it]self of the privilege of conducting activities, ... thus invoking the benefits and protections of [the state's] laws."

Id. (citation omitted).  A court considers five factors to measure minimum contacts: "(1) the nature and quality of a defendant's contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents and (5) the convenience of the parties."  Dever v. Hentzen Coatings, Inc., 380 F.3d 1070, 1073-74 (8th Cir. 2004).  The court gives significant weight to the first three factors.  See id. Moreover, personal jurisdiction over a corporate successor may be based on its predecessor's contacts with the forum, provided the successor would be liable for its predecessor's acts under the forum's law.  See Williams v. Bowman Livestock Equip. Co., 927 F.2d 1128, 1132 (10th Cir. 1991); City of Richmond v. Madison Mgmt. Group, 918 F.2d 438, 454 (4th Cir. 1990); Duris v. Erato Shipping, Inc., 684 F.2d 352, 256 (6th Cir. 1989); Drayton Grain Processors v. NE Foods, Inc., No. 3:06-37, 2007 WL 983825, at *7 (D.N.D. Mar. 30, 2007).

In this case, it is undisputed that JTEKT assumed TMW's liabilities, and TMW's contacts with Minnesota before 2006 are attributable to JTEKT.  Mid-Continent argues that TMW's and JTEKT's contacts with Minnesota establish both general and specific jurisdiction over JTEKT.

### A. General Jurisdiction

General jurisdiction exists if a defendant has "carried on in the forum state a continuous and systematic, even if limited, part of its general business." Steinbuch v. Cutler, 518 F.3d 580, 586 (8th Cir. 2008). If a court has general jurisdiction over a defendant, "the alleged injury need not have any connection with the forum state." Id.

JTEKT has sold $5 billion worth of products in the United States through its U.S. subsidiaries since 2006, including "several million units of steering systems and driveline components," "eighty million units of bearings" and "over several hundred" machine tool products. (Bye Aff. Ex. G at 4.) Furthermore, JTEKT owns twenty-four U.S. registered trademarks that are "affixed to hundreds, possibly thousands, of different products that are sold globally," and JTEKT's products are present in every Toyota automobile and truck in Minnesota. (Id. Ex. B at 29, Ex. F at 3, Ex. G at 5.) Nevertheless, JTEKT argues that the sale of goods through its U.S. subsidiaries does not establish personal jurisdiction over JTEKT in Minnesota because JTEKT itself has no direct contacts with Minnesota. Specifically, JTEKT has no offices, employees, inventory, bank accounts, real estate or personal property in Minnesota and is not registered to do business in the state. Rather, all JTEKT products in Minnesota are sold exclusively through its U.S. subsidiaries.

Where a foreign manufacturer "heads a distribution network, thus realizing the much greater economic benefit of multiple sales in distant forums ... its activities may satisfy the purposeful availment test." Barone v. Rich Bros. Interstate Display Fireworks Co., 25 F.3d 610, 613 (8th Cir. 1994).  To evaluate whether sufficient contacts exist, a court considers whether the foreign manufacturer (1) designed the product at issue for the U.S. market; (2) allowed its U.S. affiliates to distribute the product; (3) put its logo and identifying decals on the product; (4) maintained a website accessible to residents of the forum state; (5) knew the product at issue would end up in the forum state or (6) provided ongoing services in the forum state.  See Clune v. Alimak AB, 233 F.3d 538, 543-44 (8th Cir. 2000) (citing Vandelune v. 4B Elevator Components Unltd., 148 F.3d 943, 943 (8th Cir. 1998)); Vang v. Whitby Tool & Eng'g Co., 484 F. Supp. 2d 966, 971-72 (D. Minn 2007).

Toyoda has been JTEKT's exclusive U.S. distributor from JTEKT's inception.  Toyoda sold 1,500 TMW and JTEKT products in Minnesota since 2003 at a profit of $10 million, including $925,000 worth of sales to Mid-Continent.  (Bye Aff. ¶ 15, Ex. A at 37, Ex. L, Ex. P § 4.1.)  In addition to the four machines at issue in this case, Mid-Continent purchased three other TMW or JTEKT machines from Toyoda.  (Id. at Ex. C at 40-41.)  Toyoda's website, which bears the masthead "Toyoda JTEKT Group," is accessible to Minnesota

8

residents and indicates that Toyoda has a Minnesota regional manager and dealer with offices in Minneapolis. (Id. Exs. M, T.) JTEKT also maintains a website that allows customers to submit online inquiries about machine tools, as well as a global call center that operates twenty-four hours a day. (Id. Ex. J at 3.) In addition, Toyoda and JTEKT jointly operate a publicity booth at a bi-annual trade show in Chicago that Mid-Continent representatives have attended on multiple occasions. (Id. Ex. A at 38-39.) Based upon these facts, the court determines that Toyoda's systematic and continuous contacts with Minnesota are properly attributable to JTEKT. See Clune, 233 F.3d at 544 (personal jurisdiction over foreign manufacturer existed due to U.S. subsidiaries' contacts with forum state); Vang, 484 F. Supp. 2d at 971-72 (same).

Despite its substantial contacts with Minnesota, JTEKT argues that the state has little interest in providing a forum for relief because this case does not arise out of a personal injury or an intentional tort. Minnesota, however, has an equally strong interest in the enforcement of the contracts of its corporations. See Thompson v. Ecological Sci. Corp., 421 F.2d 467, 470 (8th Cir. 1970). JTEKT further notes the inconvenience it would endure if forced to litigate the suit in Minnesota. JTEKT, however, is a sophisticated business entity with offices located around the world and will not be significantly burdened by litigation in Minnesota.

Therefore, the court determines that JTEKT's continuous and systematic contacts with Minnesota establish general jurisdiction, and dismissal for lack of personal jurisdiction is not warranted.

### B. Specific Jurisdiction

Mid-Continent also argues that the court has specific personal jurisdiction over JTEKT. Specific jurisdiction exists when the cause of action "arise[s] out of" or "relate[s] to" a defendant's activities within that state. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985).

In 1997 Mid-Continent representatives traveled to TMW's facilities in Japan. TMW hosted the trip to "generate sales" and paid for the airfare, hotel, meal, local transportation and sightseeing costs of the Mid-Continent representatives. (Bye Aff. Ex. A at 61-64, Ex. C at 213-14). During the trip, TMW demonstrated the machines that Mid-Continent eventually bought. (Id. Ex. O.) Moreover, TMW provided ongoing technical assistance for those machines in Minnesota. This assistance included a TMW employee traveling from Japan to Minneapolis twice to fix the machines, and TMW technicians in Japan remotely accessing software on Mid-Continent's machines thirteen times to perform diagnostics and make adjustments. (Id. Ex. K.) Therefore, the court determines that the causes of action in this case arise out of

JTEKT's contacts with Minnesota.  Accordingly, even if the court did not have general jurisdiction over this case, specific personal jurisdiction exists.

## CONCLUSION

Based on the above, **IT IS HEREBY ORDERED** that JTEKT's motion to dismiss plaintiff's amended complaint [Doc. No. 31] is denied.

Dated:  May 5, 2009

                                        s/David S. Doty
                                        David S. Doty, Judge
                                        United States District Court