UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 07-3892(DSD/SRN)


Mid-Continent Engineering,
Inc., a Minnesota corporation,

       Plaintiff,

v.                                                                **ORDER**

Toyoda Machinery USA, Corp., an
Illinois corporation, and JTEKT
Corporation, a Japanese corporation,

       Defendants.


      Jonathan M. Bye, Esq., Karla M. Vehrs, Esq., and
      Lindquist & Vennum, 4200 IDS Center, 80 South Eighth
      Street, Minneapolis, MN 55402, counsel for plaintiff.

      John M. Harper III, Esq., Molly R. Hamilton, Esq. and
      Messerli & Kramer, 1400 Fifth Street Towers, 100 South
      Fifth Street, Minneapolis MN 55402 and Edward J.
      Underhill, Esq., Erin M. Gaeke, Esq. and Masuda, Funai,
      Eifert & Mitchell, 203 North LaSalle Street, Suite 2500,
      Chicago, IL 60601, counsel for defendants.


      This matter is before the court on defendants' motion for

summary judgment. After a review of the file, record and

proceedings herein, and for the following reasons, the court grants

defendants' motion in part.

**BACKGROUND**

This contract dispute arises out of plaintiff Mid-Continent Engineering, Inc.'s[1] ("Mid-Continent") 2001 and 2003 purchases of horizontal machining centers[2] from defendant Toyoda Machinery USA, Corp. ("Toyoda").[3] Each machine contained spindles that operated at a speed of 20,000 revolutions per minute ("RPMs"). The spindle speed controlled the machines' output and efficiency.

At the time of Mid-Continent's purchases, Toyoda was a wholly-owned subsidiary of Toyoda Machine Works, Ltd. ("TMW"), a Japanese corporation headquartered in Japan. Toyoda was TMW's exclusive machine-tools distributor in North America pursuant to an April 2000 sales agreement. The sales agreement contained the following warranty (the "JTEKT warranty"):

> (1) TMW warrants that the products are not defective in their materials and workmanship;
>
> (2) The warranty period by TMW shall be eighteen months after the date of consignment of products to ship and twenty months after the date of purchase;

---

[1] Mid-Continent is a Minnesota corporation with its principal place of business in Minnesota. Mid-Continent manufactures metal machine parts for the defense, aerospace and medical technology industries.

[2] Horizontal machining centers are large machines designed to cut and shape metal into tools, industrial parts and automotive components.

[3] Toyoda is an Illinois corporation with its principal place of business in Illinois that sells machinery.

> (3) TMW shall fix by own expense and self-
> responsibility in case of unsatisfaction [sic]
> on above item (1).

(Vehrs Aff. [Doc. No. 152] Ex. 74 at J00009.)  On January 1, 2006, TMW merged with another Japanese corporation, Koyo Seiko Co., to form defendant JTEKT Corp. ("JTEKT").  JTEKT succeeded to TMW's liabilities and became Toyoda's parent corporation.[4]

Mid-Continent began considering its purchase of the machines from Toyoda in 1997.  At that time, Mid-Continent representatives visited TMW's facilities in Japan to "substantiate and uphold the ability of [TMW] to develop and produce high-speed spindles in excess of 20,000 [RPMs]."  (Marvin Dep. at 231.)  Mid-Continent further discussed the machines with TMW representatives at trade shows in Germany and Chicago.  (Id. at 224.)  According to Mid-Continent, TMW and Toyoda assured it that the machines were highly reliable and efficient, replacement parts were readily available, and "if necessary, [the machines could] be brought up and running in no time flat."  (Michael Dep. at 165-66; Vehrs Aff. [Doc. No. 152] Exs. C, 16, 35, 64, 72.)

On April 23, 2001, Mid-Continent entered into a contract with Toyoda wherein it agreed to purchase two machines and a rail-guided

---

[4] In July 2007, JTEKT and Toyoda entered into an exclusive distributorship agreement that terminated the 2000 sales agreement. (Kaijima Dep. at 36.)

vehicle ("RGV") system[5] for $1,650,000.  (Vehrs Aff. [Doc. No. 152]

Exs. 5-6.)    The contract contained Toyoda's standard terms and

conditions and the following:

> [Toyoda] warrants that within twelve months
> from original installation or fifteen months
> from original shipment, whichever is earlier,
> if its products are in possession of the
> original specified user, [Toyoda] will repair
> or replace, at its option, free of charge,
> except freight FOB shipping points, any parts
> it finds non-conforming on these conditions:
>
> (a) On request, user promptly allows [Toyoda]
> to inspect, and user returns all requested
> parts to [Toyoda's] plant; and,
> (b) The user has operated and maintained
> products in accordance with [Toyoda's]
> maintenance and operational literature and
> good
> (c) [sic] products ... have not been misused,
> abused, damaged by accident or altered without
> [Toyoda's] written consent; and
> (d) The user employs trained maintenance and
> operating personnel; and
> (e) Buyer meets all payment obligations
>
> [Toyoda] warrants tooling and product[s]
> manufactured by others to the extent warranted
> by their original manufacturers, on these same
> conditions.  THIS WARRANTY IS EXCLUSIVE AND IN
> LIEU OF ALL OTHER WARRANTIES WHETHER WRITTEN,
> ORAL OR IMPLIED (INCLUDING ANY WARRANTY OF
> MERCHANTABILITY OR FITNESS FOR PARTICULAR
> PURPOSE).

---

[5] An RGV system "uses a rail or conveyor belt alongside
several machines to automatically feed raw materials into the
machining centers and to remove parts once they have been
machined."  (Vehrs Aff. [Doc. No. 152] Ex. A at 5.)  Using the RGV
system, Mid-Continent could "combine and automate a number of
[machines] into a more efficient cluster than if they were free-
standing."  (Id. Ex. A at 5.)

(Id. Ex. 5 ¶ 8 (emphasis in original).)  In addition, the contract included a choice-of-law provision that stated, "[a]ll proposals, quotations and sales hereunder shall be governed first by these terms, then by the Illinois Uniform Commercial Code, then by other Illinois law." (Id. Ex. 5 ¶ 14.)  The machines were installed at Mid-Continent's facilities in early 2002.  (Underhill Decl. [Doc. No. 149] Ex. 22.)  On June 27, 2003, Mid-Continent purchased two more machines from Toyoda for $1,384,400, subject to the same terms and conditions.  (Id. Ex. 27; Vehrs Aff. [Doc. No. 152] Exs. 18, 21.)  Those machines were delivered to Mid-Continent in August 2003.  (Pl's Mem. Opp'n 12.)

After Mid-Continent began using the machines, however, they began to break down due to the repeated failure of the spindles. In response, Toyoda replaced some of the spindles and Mid-Continent paid Toyoda approximately $300,000 to complete repairs that were ultimately unsuccessful.  (Vehrs Aff. [Doc. No. 152] Ex. 230 at 10.)  Mid-Continent later paid Toyoda $420,000 to retrofit the machines with slower spindles that operate at a speed of 14,000 to 15,000 RPMs.  (Id.)  The retrofitting process began in May 2007 and ended in February 2008.  (Id. Ex. 230 at 4-5.)  According to Mid-Continent, the inoperative spindles resulted in 4,600 hours of lost operation time and more than $3,500,000 in damages.

On August 15, 2007, Mid-Continent filed a four-count complaint in state court against Toyoda, asserting breach of contract,

breach of express warranty and breach of the implied warranties of fitness and merchantability. Toyoda timely removed, and admitted in its answer that it sold the machines to Mid-Continent, but identified JTEKT as the manufacturer of the machines.[6] On March 20, 2008, Mid-Continent amended its complaint to add JTEKT as a defendant. Thereafter, JTEKT filed a motion to dismiss for lack of personal jurisdiction. In a May 5, 2009, order, the court denied JTEKT's motion. The court now considers Toyoda and JTEKT's June 1, 2009, motion for summary judgment.

## DISCUSSION

### I. Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the

---

[6] In a December 9, 2008, amended interrogatory answer, Toyoda identified TMW as the manufacturer.

evidence is such that it could cause a reasonable jury to return a verdict for either party.  See id. at 252.

On a motion for summary judgment, the court views all evidence and inferences in a light most favorable to the nonmoving party. See id. at 255.  The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial.  See Celotex, 477 U.S. at 324.  Moreover, if a plaintiff cannot support each essential element of her claim, the court must grant summary judgment because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial.  Id. at 322-23.

## II. Mid-Continent's Claims Against JTEKT

### A.  Choice of Law

Mid-Continent alleges that it is a third-party beneficiary to the 2000 sales agreement between TMW and Toyoda, and bases its claims against JTEKT on the warranty contained therein.  (Am. Compl. ¶ 19.)  The parties dispute whether Minnesota or Illinois law applies to the agreement.  Therefore, before considering the merits of Mid-Continent's claims against JTEKT, the court first determines which state's law governs the 2000 sales agreement.

#### 1.  Outcome-Determinative Conflict

In diversity cases such as this, the court applies the forum state's choice-of-law analysis.  See Birnstill v. Home Sav. of Am.,

7

907 F.2d 795, 797 (8th Cir. 1990). Before applying that analysis, however, the court "must determine that a conflict exists between the laws of two forums." Nodak Mut. Ins. Co. v. Am. Family Mut. Ins. Co., 604 N.W.2d 91, 93-94 (Minn. 2000) (citation omitted). "A conflict exists if the choice of one forum's law over the other will determine the outcome of the case." Id. at 94. In this case, an outcome-determinative conflict exists. As explained below, Minnesota and Illinois have different privity requirements that control whether Mid-Continent may bring a breach of warranty claim against JTEKT.

The Minnesota Uniform Commercial Code ("U.C.C.") "creates a broad exception to [] privity requirement[s]." Gold'n Plump Poultry, Inc. v. Simmons Eng'g Co., 805 F.2d 1312, 1318 (8th Cir. 1986). Under Minnesota law, "[a] seller's warranty whether express or implied extends to any person who may reasonably be expected to use, consume or be affected by the goods and who is injured by breach of the warranty." Minn. Stat. § 336.2-318; Transp. Corp. of Am. v. Int'l Bus. Machs. Corp., 30 F.3d 953, 958 (8th Cir. 1994). The term "person" includes corporations and other business organizations. See Minn. Stat. § 336.1-201(27). Therefore, under Minnesota law, the JTEKT warranty extends to Mid-Continent if Mid-Continent may reasonably be expected to use the machines and was injured by the alleged breach.

In contrast, to enforce an express or implied warranty under Illinois law, a plaintiff alleging purely economic loss, as here, must show privity of contract with the defendant. See Caterpillar, Inc. v. Usinor Industeel, 393 F. Supp. 2d 659, 677-78 (N.D. Ill. 2005). "Privity requires that the party suing has some contractual relationship with the one sued." Id. at 677 (citation and quotation omitted). Absence of privity, however, may not bar an action based on implied warranty when the plaintiff is a third-party beneficiary to a contract. See id. at 678-79. Under Illinois law, "only third parties who are direct beneficiaries have rights under a contract." Ocasek v. City of Chicago, 656 N.E.2d 44, 48 (Ill. App. Ct. 1995) (citation omitted). A party is "a direct rather than an incidental beneficiary when the contracting parties have manifested in their contract an intention to confer a benefit upon the third party." Ball Corp. v. Bohlin Bldg. Corp., 543 N.E.2d 106, 107 (Ill. App. Ct. 1989) (citations omitted).

In this case, it is undisputed that Mid-Continent was not a party to the 2000 sales agreement between TMW and Toyoda. Moreover, no evidence indicates that TMW and Toyoda expressly intended to benefit Mid-Continent in the 2000 sales agreement. Therefore, Mid-Continent is merely an incidental beneficiary to the 2000 sales agreement. As such, Mid-Continent is not in privity of contract with JTEKT and cannot state claims against JTEKT for breach of express or implied warranties under Illinois law.

## 2. Contacts

Because an outcome-determinative conflict exists, the court "consider[s] whether each state's statute may be constitutionally applied." Christian v. Birch, 763 N.W.2d 50, 56 (Minn. Ct. App. 2009). "[F]or a state's substantive law to be selected in a constitutionally permissible manner, that state must have a significant contact or significant aggregation of contacts [with the occurrence or transaction giving rise to the litigation], creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." Jepson v. Gen. Cas. Co. of Wisc., 513 N.W.2d 467, 469 (Minn. 1994) (citing Allstate Ins. Co. v. Haque, 449 U.S. 302, 312-13 (1981)). "[I]f a state has only an insignificant contact with the parties and the occurrence or transaction, application of its law is unconstitutional." Haque, 449 U.S. at 310-11.

In this case, both Minnesota and Illinois have sufficient contacts such that the law of either state could be constitutionally applied. With regards to Minnesota, the machines were delivered to Mid-Continent in Minnesota, the machines malfunctioned while in Mid-Continent's possession in Minnesota, and repairs took place in Minnesota. With regards to Illinois, the parties held meetings in Illinois to discuss the sale of the machines, and Mid-Continent sent payment for the machines to Toyoda in Illinois.

### 3.  Choice-Influencing Factors

Having determined that the law of either Minnesota or Illinois may be constitutionally applied, the court examines five factors to determine the governing law: (1) predictability of result; (2) maintenance of interstate order; (3) simplification of the judicial task; (4) advancement of the forum's governmental interest; and (5) application of the better rule of law.  <u>See</u> <u>Milkovich v. Saari</u>, 203 N.W.2d 408, 412 (Minn. 1973).

### a.  Predictability

The first factor, predictability of results, "represents the ideal that litigation on the same facts, regardless of where the litigation occurs, should be decided the same to avoid forum shopping."  <u>Nodak</u>, 604 N.W.2d at 94.  "In addition, this factor acts to preserve the parties' justified contractual expectations." <u>Id.</u> (citation omitted).

In this case, several facts indicate that the parties expected Illinois law to apply to litigation related to the machines. First, Mid-Continent agreed to an Illinois choice-of-law provision in its 2001 and 2003 contracts with Toyoda.  While that provision does not govern the 2000 sales agreement, it indicates that Mid-Continent assented to and expected Illinois law to apply to litigation concerning the machines.  Second, Mid-Continent did not learn of the 2000 sales agreement until this action commenced. Until that point, the 2001 and 2003 contracts provided the sole

basis for Mid-Continent's claims.  Mid-Continent cannot disclaim its prior expectation that Illinois law would apply upon learning that a more favorable forum might exist.  Third, TMW entered into the 2000 sales agreement with Toyoda, an Illinois corporation with its principal place of business in Illinois.  JTEKT later manufactured the machines at issue for Toyoda, who subsequently sold them to Mid-Continent.  These circumstances suggest that JTEKT reasonably could have expected Illinois law to apply to future disputes involving the machines.  Lastly, applying Illinois law would ensure consistent results in this case because Mid-Continent asserts the same claims, based on identical facts, against JTEKT and Toyoda.  As noted below, the court must apply Illinois law to Mid-Continent's dispute with Toyoda due to the choice-of-law provision in the 2001 and 2003 contracts.  In light of these circumstances, the court determines that this factor favors the application of Illinois law.

### b.    Maintenance of Interstate Order

The second factor, maintenance of interstate order, concerns whether the application of Minnesota law would manifest disrespect for the sovereignty of the state of Illinois or impede the interstate movement of people and goods.  See id. at 95 (quotation and citation omitted).  "An aspect of this concern is to maintain a coherent legal system in which the courts of different states strive to sustain, rather than subvert, each other's interests in

12

areas where their own interests are less strong." Id. (citation omitted). To examine this factor, the court "looks at the contacts the state has with the issues being litigated, and the risk of encouraging forum shopping by applying that state's law." Nw. Airlines, Inc. v. Astraea Aviation Servs., Inc., 111 F.3d 1386, 1394 (8th Cir. 1997) (citations omitted).

As noted above, both Minnesota and Illinois have important contacts with this case. Minnesota law, however, is more favorable to Mid-Continent than Illinois law, a situation that could lead to forum shopping. No evidence, however, indicates that Mid-Continent has engaged in forum shopping. Therefore, this factor does not favor either party.

### c. Simplification of the Judicial Task

The third factor, simplification of the judicial task, is "primarily concerned with the clarity of the conflicting laws." Nodak, 604 N.W.2d at 95. Because the laws of Minnesota and Illinois are clear and easily applied, this factor is not significant in this case. See Jepson, 513 N.W.2d at 472 (third factor given no weight when law of either state could be applied without difficulty).

### d. Advancement of the Forum's Governmental Interest

The fourth factor is "which choice of law most advances a significant interest of the forum." Id. "Concern for injured consumers" was Minnesota's "primary motivation" for adopting its

relaxed privity requirements.  <u>Minn. Min. & Mfg. Co. v. Nishika</u> <u>Ltd.</u>, 565 N.W.2d 16, 20 (Minn. 1997) (citing Minn. Stat. § 336.2-318).  Minnesota's interest, however, is not unlimited.  Rather, the Minnesota Supreme Court has held that "the scope of a seller's liability for breach of warranty should recede as the relationship between a 'beneficiary' of the warranty and the seller's goods becomes more remote."  <u>Id.</u> at 21.  Nevertheless, Minnesota's relaxed privity requirements allow a plaintiff to more easily establish a prima facie case of breach of warranty than under Illinois law, and the court's application of Illinois law might undermine Minnesota's consumer protection policy.  As a result, this factor slightly favors the application of Minnesota law.

### e.  The Better Rule of Law

Minnesota courts only apply the better-rule of law factor when the first four factors do not resolve the choice-of-law question. <u>See</u> <u>Medtronic Inc. v. Advanced Bionics Corp.</u>, 630 N.W.2d 438, 455-56 (Minn. Ct. App. 2001); <u>see also</u> <u>Nodak</u>, 604 N.W.2d at 96 (noting that the Minnesota Supreme Court "has not placed any emphasis on [the fifth] factor in nearly twenty years.").  Here, the first four factors resolve the choice-of-law issue.  Therefore, the court does not consider the fifth factor.

### f.  Summary

In summary, while the court recognizes Minnesota's legitimate interest in advancing consumer protection, the court finds the

predictability factor controlling in this case.  Therefore, in accordance with the parties' expectations, the court applies Illinois law to the 2000 sales agreement.  As discussed above, under Illinois law Mid-Continent is neither in privity of contract with JTEKT, nor is Mid-Continent a third-party beneficiary to the 2000 sales agreement.  Consequently, Mid-Continent cannot maintain its actions for breach of contract and warranty against JTEKT.  Accordingly, the court determines that summary judgment is warranted on Mid-Continent's claims against JTEKT.

## III.  Mid-Continent's Claims Against Toyoda

### A.  Choice of Law

It is undisputed that the parties agreed that Illinois law would govern the substantive legal matters arising from the 2001 and 2003 contracts, but did not indicate what law should apply to procedural matters.  Minnesota courts generally enforce contractual choice-of-law provisions.  See Milliken & Co. v. Eagle Packaging Co., 295 N.W.2d 377, 380 n.1 (Minn. 1980).  This rule, however, is not absolute.  Under Minnesota law, "[i]f the parties wish for the application of another state's law concerning ... procedural and remedial matters, they must expressly state it in their agreement." Schwan's Sales Enters., Inc. v. SIG Pack, Inc., 476 F.3d 594, 596 (8th Cir. 2007) (citation omitted).  Furthermore, "[e]ven in the face of a general, contractual choice-of-law provision, Minnesota courts apply Minnesota law regarding matters of procedure." Id.

15

Therefore, the court applies Illinois substantive law and Minnesota procedural law to the 2001 and 2003 contracts.

### B.   Applicable Warranty

At the core of Mid-Continent's dispute with Toyoda is the parties' disagreement over the warranty set forth in the 2001 and 2003 contracts.   According to Toyoda, it only warranted that it would repair or replace non-conforming parts within the first twelve months of the installation of the machines.   Mid-Continent argues, however, that Toyoda made two warranties: one for products it manufactured and a second for products manufactured by others. Specifically, Mid-Continent maintains that Toyoda's repair-or-replace warranty applied only to Toyoda's products.   In addition, Mid-Continent contends that Toyoda adopted the warranties of the original manufacturers for products Toyoda sold but did not manufacture.   In support of this position, Mid-Continent relies on the first sentence of paragraph three of the warranty, which states: "[Toyoda] warrants tooling and product[s] manufactured by others to the extent warranted by their original manufacturers, on these same conditions."   (Vehrs Aff. [Doc. No. 152] Ex. 5.) According to Mid-Continent, this sentence indicates that Toyoda adopted JTEKT's warranty - as set forth in the 2000 sales agreement - for the JTEKT-manufactured products that Toyoda sold. Consequently, Mid-Continent contends that the JTKET warranty

applies to its 2001 and 2003 purchases from Toyoda, not the repair-or-replace warranty.

Under Illinois law, the interpretation of a contract is a question of law to be decided by the court. See Nat'l Diamond Syndicate, Inc. v. United Parcel Serv., Inc., 897 F.2d 253, 256 (7th Cir. 1990) (citation omitted). The court interprets the contract "as a whole, in a way that gives effect to all terms, in the light of their ordinary and natural meanings." LaSalle Nat. Trust, N.A. v. ECM Motor Co., 76 F.3d 140, 144 (7th Cir. 1996) (citations omitted). In addition, the court must "give effect to the intention of the parties at the time of the agreement." Id. "Where the terms of the contract are clear, the court must ascertain that intent solely from the language of the agreement." Id. If the contract is ambiguous, the "resolution of the ambiguity becomes a question of fact." Id.

Toyoda first argues that paragraph three of the warranty merely indicates that it warranted the products of other manufacturers on the same conditions as the repair-or-replace warranty. The court disagrees. A plain reading of the phrase, "on these same conditions," as used in the first sentence of paragraph three suggests that it refers not to Toyoda's repair-or-replace warranty, but rather to the conditions listed in paragraph two. Those conditions set forth certain prerequisites - such as correct

operation of the product – that Mid-Continent had to satisfy prior to invoking the warranty provision.

Furthermore, Toyoda's suggested interpretation would render paragraph three superfluous. Rather, a plain reading that gives effect to all the contractual terms supports Mid-Continent's position that Toyoda made two warranties. Specifically, in paragraph one of the warranty, Toyoda promised to repair or replace non-conforming parts for its products, subject to the conditions listed in paragraph two. In paragraph three, Toyoda warranted the products manufactured by others to the extent warranted by the original manufacturers, also subject to the conditions listed in paragraph two.

Toyoda next argues that the machines purchased by Mid-Continent are "its products," covered by the repair-or-replace warranty. The contract, however, expressly distinguishes between Toyoda's products and "product[s] manufactured by others." It is undisputed that JTEKT manufactured the machines Mid-Continent purchased from Toyoda. The machines, therefore, are properly categorized as "products manufactured by others." Consequently, pursuant to the plain terms of the contract, the machines are governed by JTEKT's warranty – as adopted by Toyoda - rather than the repair-or-replace warranty that applies only to Toyoda's products.

In the alternative, Toyoda maintains that summary judgment remains appropriate even if the court concludes that it adopted JTEKT's warranty. Specifically, Toyoda argues that the statute of limitations has run on Mid-Continent's claims and that it excluded the implied warranties of fitness and merchantability and limited its damages in the 2001 and 2003 contracts. The court addresses each argument in turn.

## C.    Statute of Limitations

First, Toyoda argues that even if it adopted JTEKT's warranty, summary judgment is necessary because the statute of limitations has expired on Mid-Continent's claims. Minnesota law requires that "[a]n action for breach of any contract for sale must be commenced within four years after the cause of action has accrued."[7] Minn. Stat. § 336.2-725(1); Marvin Lumber & Cedar Co. v. PPG Indus. Inc., 223 F.3d 873, 876 (8th Cir. 2000). "Ordinary warranty claims generally accrue upon tender of delivery." Marvin Lumber, 223 F.3d at 876 (citing Minn. Stat. § 336.2-725(2)). A warranty that explicitly extends to the future performance of goods, however,

---

[7] The court applies Minnesota law to the statute of limitations question in this case. No actual conflict exists between Minnesota and Illinois law, as both states have adopted the same U.C.C. provision regarding the statute of limitations in contracts for sale. See Minn. Stat. § 336.2-725; 810 Ill. Comp. Stat. 5/2-725. Furthermore, both parties apply Minnesota law to this issue.

presents an exception to this rule.[8]  Id. at 878.  In such a case,
the cause of action "does not accrue until the breach is discovered
or should have been discovered."  Id. (citing Minn. Stat. §§ 336.2-
725(2)).  Minnesota courts "vigorously enforce[] the U.C.C.'s
statutory explicitness requirement."  Id. at 879 (citation
omitted).

In this case, Mid-Continent argues that the JTEKT warranty
explicitly extends to future performance.  That warranty, however,
does not expressly guarantee the performance of the machines for a
future period.  Cf. Anderson v. Crestliner, Inc., 564 N.W.2d 218,
223 (Minn. Ct. App. 1997) (promise that new boat "shall be free
from any defect" is warranty of future performance).  Rather, the
JTEKT warranty guaranteed that the products "are not defective" and
provided that defects arising within a specified period would be
covered under the warranty.  See id. (distinguishing between
warranty for future performance and repair-or-replace warranty).
Therefore, because the JTEKT warranty does not explicitly extend to
the future performance of the machines, the court determines that
the four-year statute of limitations applies to Mid-Continent's
claims against Toyoda.

---

[8] "'Implied warranties cannot, by their very nature,
explicitly extend to future performance.'" Highway Sales, Inc. v.
Blue Bird Corp., 559 F.3d 782, 788-89 (8th Cir. 2009) (quoting
Marvin Lumber, 223 F.3d at 879).  Therefore, "a breach of implied
warranty occurs, and the claim accrues, when tender of delivery is
made."  Id. (citing Minn. Stat. § 336.2-725(2)).

It is undisputed that the 2003 machines were delivered to Mid-Continent in August 2003 and that Mid-Continent's original August 15, 2007, complaint was filed within the four-year statute of limitations period. It is also undisputed that the machines Mid-Continent purchased from Toyoda in 2001 were delivered in early 2002 and that Mid-Continent commenced this suit on August 15, 2007. To be timely, Mid-Continent's claims with respect to the 2001 machines should have been filed in early 2006.

Nevertheless, Mid-Continent argues that summary judgment is inappropriate because issues of fact remain as to whether the statute of limitations period was tolled by the doctrines of equitable estoppel and estoppel by repair. "Under the doctrine of equitable estoppel, if a buyer delays filing suit as a result of reasonable and detrimental reliance on a seller's assurances it will repair the defective goods, the limitations period is tolled during that period of delay." Blue Bird Corp., 559 F.3d at 789 (citations omitted). Estoppel is ordinarily a question of fact for a jury to decide. Id. at 790.

In this case, Toyoda made repairs on the 2001 machines as late as May 2007 and then retrofitted the machines, a process that terminated in September 2007. (Vehrs Aff. [Doc. No. 152] Ex. 230 at 4-5.) Mid-Continent alleges that it reasonably relied on Toyoda's assurances that the machines could be repaired, and that such reliance was detrimental due to the expense and limited

success of the repairs and retrofit. Viewing the evidence in the light most favorable to Mid-Continent, the court determines that issues of fact remain as to whether Mid-Continent reasonably and detrimentally relied on Toyoda's assurances, and whether Mid-Continent delayed filing suit as a result. Accordingly, summary judgment is not appropriate with respect to Mid-Continent's claims against Toyoda on the 2001 machines.

### D.  Implied Warranties

Second, Toyoda argues that summary judgment is warranted on Mid-Continent's claims for breach of the implied warranties of fitness and merchantability because Toyoda excluded all implied warranties in the 2001 and 2003 contracts. Illinois law provides that "to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous." 810 Ill. Comp. Stat. 5/2-316(2). In support of its argument, Toyoda directs the court to the last sentence of the warranty provision, which states: "THIS WARRANTY IS EXCLUSIVE AND IN LIEU OF ALL OTHER WARRANTIES WHETHER WRITTEN, ORAL OR IMPLIED (INCLUDING ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR PARTICULAR PURPOSE)." (Vehrs Aff. [Doc. No. 152] Ex. 5 ¶ 8 (emphasis in original).) The prior sentence, however, states that Toyoda "warrants ... product[s] manufactured by others to the

extent warranted by their original manufacturers." (Id.)  It is undisputed that the JTEKT warranty did not exclude the implied warranties.  The plain meaning of the last sentence of the warranty provision indicates that Toyoda excluded all warranties except the JTEKT warranty.  Therefore, by exclusively adopting the JTEKT warranty, Toyoda impliedly warranted the machines.  As a result, Toyoda's exclusion argument fails.

### E.    Liability Limitation

Lastly, Toyoda contends that the court should grant summary judgment because it disclaimed liability for any damages. Specifically, paragraph eleven of Toyoda's standard terms and conditions states that "[Toyoda] shall not be liable for downtime, lost profit, direct, indirect, incidental or consequential damage caused by non-conforming material, unsatisfactory performance, unsafe practice, repairs, additions or alterations to its products without [Toyoda's] written consent."  (Id. Ex. 5 ¶ 11.)

In response, Mid-Continent argues that paragraph eleven does not modify the JTEKT warranty, which contains no liability limitation.  The court, however, must interpret the 2001 and 2003 contracts as a whole, "in a way that gives effect to all terms" ECM Motor Co., 76 F.3d at 144.  No language limits paragraph eleven.  A plain reading of the contract thus indicates that the liability limitation applies to the JTEKT warranty.

23

Nevertheless, summary judgment is not appropriate on this basis because issues of fact exist as to the cause of Mid-Continent's damages. Paragraph eleven limits Toyoda's liability for damages caused by Mid-Continent's use of "non-conforming material, unsatisfactory performance, unsafe practice, repairs, additions or alterations" to the machines "without [Toyoda's] written consent." (Vehrs Aff. [Doc. No. 152] Ex. 5 ¶ 11.) As Mid-Continent correctly notes, no allegations have been made that any damages were caused by Mid-Continent's "unsafe practice[s], repairs, additions or alterations." Whether the alleged damages were caused by Mid-Continent's use of "non-conforming material [or] unsatisfactory performance" of the machines remains a genuine issue of material fact. Accordingly, the court will not grant summary judgment on this issue.

## CONCLUSION

Based on the above, **IT IS HEREBY ORDERED** that:

1.    Defendants' motion for summary judgment [Doc. No. 146] is granted with respect to all claims against defendant JTEKT; and

2.    Defendants' motion for summary judgment [Doc. No. 146] is denied with respect to defendant Toyoda, on terms consistent with this order.

Dated:  November 10, 2009

                              s/David S. Doty
                              David S. Doty, Judge
                              United States District Court